Welch, J.
It is claimed, in the first place, that the District Court erred in entertaining and acting upon the cross-petition in error. The court, it is said, should have heard and decided the case upon the principal petition alone, and should either have reversed the judgment for errors assigned in the principal petition, or else have affirmed the judgment.
It is perhaps a sufficient answer to this objection to say that it comes too late. By the record it appears that the cause was heard upon the cross-petition, as well as the principal petition, without objection. No motion was made to strike the cross-petition from the files, and the cause was, in effect, submitted to the court upon both petitions. Had such a motion, however, been made, we think the court would not have erred in overruling it. There is no good reason why cross-petitions in error should not be allowed equally as in original actions. They were allowed at common law, and there is nothing in the code which forbids their use. On the contrary, they are calculated to subservea leading object of the code,-namely, to avoid multiplicity of suits, and to render litigation simple, cheap, and speedy. In order to reverse a judgment, the plaintiff in error must show, not only that the judgment is erroneous, but also that the error works a prejudice to him. If it appears in the record that there is error, not to his prejudice, but to the prejudice of the defendant in error, there is no good reason why the latter should not be allowed at once, the-record and the parties all being before the court, to ask and obtain the reversal or modification of the judgment: *523 for Ills benefit. To summon the opposite party, who is already in court, and to bring in a copy of the record, a copy of which is already in court, would be a useless labor, and involve an unnecessary expense and delay; and to bring in and file with the petition in error the papers in the original case, as the present law requires, would seem to be impracticable, they already being in court. We think the court did not err in entertaiuing the cross-petition, and hearing and deciding the case upon it as well as upon the original petition in error.
It is claimed, also, that the court erred in rendering a final judgment in the case, instead of remanding it to the Common Pleas for retrial and further proceedings.
We fail to see on what ground this objection can be maintained. There was a special finding of the facts by the court, and the oidy question that remained was as to the judgment warranted b3r these facts. There was no motion for a now trial, and no bill of exceptions setting forth the evidence. Counsel seem to base their argument upon the idea that the evidence is set forth in the special finding of the court, and that that finding takes the place-of a bill of exceptions, and is to be regarded as such. This arises írom a failure to distinguish between the fads and the evidence. We have before us, in the finding of the-court, all the/«cis of the case; but we know nothing of the evidence upon which those facts were found. It matters not that the finding is in the language of the witnesses; it is nevertheless a finding of facts, and not merely the testimony in the case.
Butthe plaintiffs in error insist, that upon the facts found, the bank ivas entitled to no judgment; (1) because the original notes for which, in part, the noie in suit was given, were void for usury ; (2) because the bank was not authorized by its charter to take a note and mortgage executed to a third person; and (8) because no consideration was paid by Stivers for the note and mortgage, nor was any paid by the bank to him. They also insist, that if the bank was entitled to any judgment, no interest should have *524 been allowed or recovered upon the note in suit, and that the usurious interest reserved upon the old notes, and iri■corporated into the note in suit, should have been excluded.
We have already held, in the case of the First National Bank of Columbus v. Garlinghouse, decided at the present term, that the reservation of illegal interest by a national bank, organized or acting under the act of 1864, does not render the note or bill discounted void in loto. These old notes were, therefore, at the time of the making and execution of the note and mortgage in suit, valid and subsisting securities, and their surrender was a sufficient consideration to support the note and mortgage in suit. And there is clearly nothing in the objection that the note and mortgage were made to Stivers, and without consideration moving from him, and transferred by him to the bank without any consideration from the bank to him. This was a mere form of executing the new notes and mortgages to the bank. Stivers took them, of course, as mere agent or trustee for the bank. The whole thing was done by the mutual agreement of all parties, and that agreement and its execution on the part of the bank, and by Stivers, was the real •consideration for the notes and mortgage executed by the Shinkles.
We are equally clear in the opinion that the bank had power, by its charter, to take notes and mortgages in this way and form, for the purpose of securing its claims. The power to adopt reasonable and necessary measures for the collection and security of debts is necessarily incident to the power of banking. As we construe section 8 of the act of Congress of 1864, it expressly gives all such necessary incidental powers, without limitation as to the particular modes in which they are to be exercised. The words, “ by discounting promissory notes, dralts, bills of exchange,” etc., contained in that section, are not to be read as limiting the modes of exercising the incidental powers granted, but as limiting and defining the kind of banking which is authorized by the act. In other words, the association is authorized by section 8, to carry on “ banking by *525 discounting and negotiating promissory notes, drafts, bills of exchange,” etc., and to exercise “ all such incidental powers as shall be necessary” for that purpose.
But did the court err in allowing the bank to recover interest upon the new note, and to recover the illegal interest reserved upon the old notes, or rather, the pro rata part of such illegal interest incorporated in the new notes? We think not. We regard the transaction of settlement between these parties as an absolute payment of the old notes, and in no sense a renewal or continuance of the indebtedness which they were given to secure. In legal effect the transaction was equivalent to an actual payment of the old' debts in money, and tho borrowing anew, by each party, of the amount for which he so executed his new note and mortgage. Viewed in this light, it is undeniable that the-now note in suit, not being in itself usurious, would bear interest. It would follow, also, that the Shinkles, under the* provision of section 30 of said act, would have the right toreeover back from the bank double the amount of the usurious interest so paid. But this right to recover double the-* amount of interest is limited by the act to two years from the time the interest was paid, and unless it is exercised within that period, it is gone. In the present case, the period of two years had elapsed long before the commencement of the action. The right to recover the interest being barred, the right to offset the amount against any claim of the bank is also barred. It is unnecessary, therefore, to inquire whether a pro rata, or any other part of the usurious interest so paid upon the old debts, could, in case-the right of recovery had not been so barred, be offset against the claim of the bank in the present case. It is enough to say, if the right ever existed, it has been extinguished by lapse of time.

Motion overruled.